IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

NATIONAL DEMOCRATIC POLICY
COMMITTEE, *et al.*,
     Plaintiffs,

v.
                                                    Civil No. 3:88cv570 (DJN)

GERALD F. LACKEY, *in his official
capacity as Commissioner of the Virginia
Department of Motor Vehicles*,
     Defendant.

## MEMORANDUM ORDER
**(Granting Motion to Vacate Consent Decree)**

This matter comes before the Court on Defendant Gerald F. Lackey's ("Defendant")[1] Motion to Vacate Consent Decree. (ECF No. 1 ("Motion").) Defendant moves the Court to vacate the Consent Decree and dissolve the injunction entered on January 31, 1989, which ordered the Virginia Department of Motor Vehicles ("DMV") to allow Plaintiff National Democratic Policy Committee ("NDPC") to assemble and solicit customers outside of Virginia DMV Customer Service Centers ("CSCs"). Defendant asserts that, in light of a significant change in the law and circumstances since the entry of the Consent Decree, the legal basis for the Decree now stands invalid and continuing its enforcement would be inequitable. (*Id.* at 1–2.)

On August 15, 2024, the Court directed the parties to file notices regarding the steps taken to notify Plaintiffs or any successor organization of the instant litigation. (ECF No. 3.)

---

[1]    This suit was originally filed against the Virginia Department of Motor Vehicles ("DMV") and Donald E. Williams, former Commissioner of the DMV, in his official capacity. As part of the settlement in this case, DMV was dismissed as a defendant and the Consent Decree bound Williams and "his successors, agents, and employees." Lackey, the current DMV Commissioner, was substituted for Williams as Defendant on July 23, 2024.

The Order also directed any interested party to file a position on the Motion by September 12, 2024. (*Id.*) Plaintiffs' counsel responded, stating that he has had no contact with NDPC or its principals since 2002, that the organization's "guiding light" had died and that he does not expect that a successor organization exists. (ECF No. 4.) Defendant responded on August 28, 2024, stating that NDPC ceases to exist, NDPC's founder has died, reasonable investigation has not revealed any successor in interest to NDPC and Defendant has exhausted reasonable efforts to find contact information for Plaintiffs Robert A. Robinson, Jr. and Kevin Pearl. (ECF No. 5 at 1–2.) No interested party filed a position on the Motion by the Court's directed deadline. The matter now stands ripe for review. For the reasons stated herein, the Court hereby GRANTS Defendant's Motion (ECF No. 1).

## I.    BACKGROUND

This case began over thirty-five years ago, when Plaintiffs NDPC, Robinson and Pearl filed suit against former Defendant DMV and former Commissioner of the DMV Donald E. Williams (collectively, "former Defendants") for violation of the First and Fourteenth Amendments and 42 U.S.C. § 1986. (ECF No. 2 ("Mem.") at 2.) Plaintiffs alleged that the DMV and Williams violated their right to free speech by prohibiting them from assembling on sidewalks outside Virginia DMV CSCs to solicit customers and circulate materials. (*Id.*) Based on existing case law at the time, the former Defendants determined that these outdoor areas on DMV property constituted a public forum and therefore only reasonable content-neutral and time, manner and place restrictions could be enforced against groups such as NDPC. (*Id.* at 2–3, 3 n.2.) As a result, the former Defendants reached a settlement with Plaintiffs on January 27, 1989. (*Id.* at 3.) A few days later, on January 31, 1989, United States District Judge Richard L. Williams entered a Consent Decree that incorporated and enforced elements of the parties'

2

Settlement Agreement.  (ECF No. 1-1.)  A separate Decree dismissed the DMV from the case, leaving Williams, in his official capacity as Commissioner of the Department of Motor Vehicles, as the sole Defendant.  (ECF No. 1-2.)

Under the Consent Decree, Commissioner Williams and his "successors, agents, and employees" were bound to permit NDPC to "distribute literature, solicit members and contributions, enter into discussions . . . and set up tables for the display of NDPC materials on the property outside of the buildings at DMV owned facilities."  (ECF No. 1-1 at 2.)  NDPC agreed that any such activity could not result in "physical obstruction or hindrance" of DMV operations or the movement of patrons.  (*Id.* at 2–3.)  If an NDPC location "unreasonably interfere[ed] with ingress to or egress from" a CSC, the parties agreed to establish "a designated area to be kept free and clear" to allow NDPC to exercise its First Amendment rights.  (*Id.* at 3.)  The Consent Decree contained several other provisions, including that its terms "shall be binding upon defendant, his successors, officers, agents and servants."  (*Id.* at 4.)  Furthermore, the Consent Decree did not establish a termination date for its enforcement.

Defendant contends that, at the time that the parties agreed to the Consent Decree, Fourth Circuit precedent indicated that DMV CSCs would constitute a public forum under the First Amendment.  (Mem. at 3.)  However, Defendant notes that the Consent Decree contains no judicial determination that the DMV property surrounding CSCs does in fact constitute a public forum; rather, the former Defendants merely conceded that "most of the property surrounding DMV owned buildings constitutes a public forum."  (*Id.* at 3 n.4.)  Defendant asserts that, one year following entry of the Consent Decree, the Supreme Court reversed the Fourth Circuit in *United States v. Kokinda*, 497 U.S. 720 (1990), with a plurality holding that postal sidewalks constitute a nonpublic forum.  *Id.* at 730; (Mem. at 4.)  Based on a fundamental change in the

law and a change in relevant circumstances, Defendant now moves the Court to vacate the

Consent Decree pursuant to Federal Rule of Civil Procedure 60(b).  (Mem. at 2.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) authorizes a district court to award relief from a

final judgment under certain discrete circumstances.  These grounds include when "applying [a

final judgment] prospectively is no longer equitable" or for "any other reason that justifies

relief." Fed. R. Civ. P. 60(b)(5)–(6).  However, the Court retains discretion in granting any relief

under Rule 60(b).  *See id.* (stating that a "court *may* relieve a party . . . from final judgment"

(emphasis added)); *see also Neumann v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 492

(E.D. Va. 2005) ("[T]he decision to grant or deny a Rule 60(b)(6) motion, as with all Rule 60

motions, is committed to the court's sound discretion.").  In cases "[w]here a party moves to

modify a consent decree under Rule 60(b)(5), the Fourth Circuit has found that the movant 'must

satisfy a heavy burden.'" *Buffalo Wings Factory, Inc. v. Mohd*, 2008 WL 2557999, at *3 (E.D.

Va. June 23, 2008) (quoting *Thompson v. United States*, 220 F.3d 241, 248 (4th Cir. 2000)).

A party seeking relief under Federal Rule of Civil Procedure 60(b) must make a threshold

showing of "timeliness, a meritorious [claim or] defense, a lack of unfair prejudice to the

opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins.

Co.*, 993 F.2d 46, 48 (4th Cir. 1993).  Furthermore, a litigant cannot use Rule 60(b) simply to

request "reconsideration of legal issues already addressed in an earlier ruling." *CNF

Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 (4th Cir. 1995).  A court may find a

judgment "no longer equitable" and grant relief under Federal Rule of Civil Procedure 60(b)(5) if

the party seeking relief "can show 'a significant change either in factual conditions or in the

law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates Suffolk Cnty. Jail*,

4

502 U.S. 367, 384 (1992)). Once the moving party satisfies its burden to establish that a change in law warrants relief, a court abuses its discretion "when it refuses to modify an injunction . . . decree in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009).

### III.   ANALYSIS

Defendant raises three arguments in support of the Motion:  (1) a significant change in the law has occurred since entry of the Consent Decree in 1989; (2) NDPC no longer actively operates and appears "basically defunct"; and (3) changes in circumstances regarding public safety and voter registration demand a policy change. (Mem. at 5–11.) Because the Court finds that a significant change in the law establishes that the DMV property outside of CSCs constitutes a nonpublic forum, the Court GRANTS Defendant's Motion, (ECF No 10), without addressing Defendant's other arguments.[2]

As Defendant notes, in *United States v. Kokinda*, a plurality of the Supreme Court found that United States Postal Service regulations forbidding solicitation on postal sidewalks did not violate the First Amendment.  497 U.S. 720, 730 (1990).  The plurality opinion conducted a forum analysis and determined that postal sidewalks constitute a nonpublic forum. *Id.* (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983)).  Noting that "[t]he government does not create a public forum by . . . permitting limited discourse, but only by

---

[2]   The Court acknowledges the Notices submitted by Plaintiffs' former counsel, (ECF No. 4), and Defendant, (ECF No. 5), which both state that NDPC's founder has died and that no successor organization appears to exist.  Defendant also states that he has "exhausted all reasonable efforts to find contact information" for Plaintiffs Robinson and Pearl.  (ECF No. 5 at 2.)  No member of the public responded before the Court's ordered deadline.  (ECF No. 3.) Because Defendant states that the DMV's policy resulting from the Consent Decree applied equally to all other similar organizations seeking to assemble outside of CSCs, the Court notes that it would be hesitant to vacate the Consent Decree merely because NDPC appears to have ceased to operate.  Nevertheless, a significant change in law compels the Court to find the Consent Decree "no longer equitable" in application to any organization.  Fed. R. Civ. P. 60(b)(5).

intentionally opening a nontraditional forum for public discourse," the plurality found that postal sidewalks were constructed to provide for passage of customers engaging in postal business. *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)). As the Supreme Court noted in *Perry*, "selective access [of some speech activities] does not transform government property into a public forum." 460 U.S. at 47. The postal sidewalks stood in contrast to public sidewalks, which are traditionally deemed a "public forum" due to their use "for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* at 45. The plurality held that the Postal Service's policy forbidding solicitation on postal sidewalks constituted a reasonable restriction within the nonpublic forum, because such activity was inherently disruptive of postal business. *Kokinda*, 497 U.S. at 732–33.

Following *Kokinda*, lower courts have applied the plurality holding to find that property analogous to postal sidewalks also constitutes a nonpublic forum. For example, the District Court of Maryland applied *Kokinda* in finding that Maryland Motor Vehicle Administration ("MVA") property constitutes a nonpublic forum subject to a reasonableness standard of review. *Int'l Caucus Lab. Comm. v. Md. DOT*, 745 F. Supp. 323, 328 (D. Md. 1990). The Court found that MVA sidewalks exist "for the particular purpose of carrying out MVA business" and "selective access to the area does not alter its nonpublic character." *Id.* The Court determined that the challenged restrictions on MVA property passed constitutional muster, because they were "viewpoint neutral" and "reasonable in light of the purpose of the forum." *Id.* at 329 (citing *Kokinda*, 497 U.S. at 730).

Similarly, in *Avedisian v. Holcomb*, 853 F. Supp. 185 (E.D. Va. 1994), this Court found that the inside of a DMV office constitutes a nonpublic forum. *Id.* at 188. In that case, this Court held that "reasonable and viewpoint neutral" restrictions in DMV offices also passed

6

constitutional muster, because the offices were "dedicated to the exercise of all of the DMV's legal duties and obligations" and did not operate as traditional spaces of public debate. *Id.* at 188–89.

In *Levy v. Rimmer*, 50 F.3d 6, 1995 WL 120509 (4th Cir. Mar. 22, 1995), the Fourth Circuit affirmed this Court's dismissal of the plaintiff's case, in which he alleged that the Postal Service and its Lincolnia, Virginia station manager prevented him from distributing campaign literature on postal property. *Id.* at *1. In holding that the plaintiff failed to state a cognizable claim, the Fourth Circuit cited *Kokinda*'s upholding of reasonable regulations prohibiting solicitation on postal property. *Id.*

Defendant cites a series of additional cases in which the Supreme Court has found property analogous to *Kokinda*'s postal sidewalks to constitute a nonpublic forum. *See, e.g., Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679, 683 (1992) (airport terminals); *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) (political-debate location); *United States v. Am. Libr. Ass'n*, 539 U.S. 194, 206 (2003) (public library internet access); *Minn. Voters All. v. Mansky*, 581 U.S. 1, 12 (2018) (polling place).

Here, the relevant property for purposes of the Consent Decree consists of DMV property and sidewalks outside of CSCs. As Defendant notes, the primary purpose of these areas consists of allowing customers ingress to and egress from CSCs to conduct traditional DMV business, such as renewing a license. (Mem. at 9.) Like the postal sidewalks addressed in *Kokinda*, the DMV did not design its sidewalks and external property for public debate, but rather to facilitate DMV business. Although the DMV has allowed groups such as NDPC to distribute literature and solicit customers, such "selective access does not transform [DMV exterior] property into a public forum." *Int'l Caucus Lab. Comm.*, 745 F. Supp. at 328. The Court also acknowledges

7

that the Consent Decree does not include a judicial determination that the area outside CSCs constitutes a public forum; rather Defendant conceded in the Settlement Agreement that it considered such property to be a public forum based on its interpretation of the existing law at the time of execution in 1989. (Mem. at 3 n.4.)

Thus, in line with the Supreme Court's 1990 decision in *Kokinda* and subsequent case law, the Court finds that DMV CSCs and their exterior property and sidewalks constitute a nonpublic forum. As such, these spaces are subject to "viewpoint neutral" restrictions that appear "reasonable in light of the purpose of the forum." *Int'l Caucus Lab. Comm.*, 745 F. Supp. at 328. This Court noted in *Avedisian v. Holcomb* that "[c]onducting the ordinary business of motor vehicle licensing and registration, tag renewal, and tax payment . . . is often a very trying experience for the ordinary citizen." 853 F. Supp. at 190. To protect this primary purpose of conducting DMV business, Defendant can enact reasonable restrictions on the actions of groups like NDPC.

As a final note, the Court clarifies that this decision applies to internal sidewalks and outdoor areas on DMV property "constructed solely to assist [DMV] patrons to negotiate the space between the parking lot and the front door." *Kokinda*, 497 U.S. at 728. Municipal sidewalks just beyond the boundaries of DMV property, which are used to "facilitate the daily commerce and life of the neighborhood or city," constitute the "quintessential" public forum entitled to more rigorous First Amendment scrutiny. *Id.* at 727–28. Accordingly, the Court emphasizes that this Order designates only internal sidewalks and outdoor areas on DMV property as a nonpublic forum.

Defendant has demonstrated a threshold showing of "timeliness, a meritorious [claim or] defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances."

*Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). As discussed above, a substantial change in the law of public forum analysis presents a meritorious claim and exceptional circumstances warranting vacatur of the Consent Decree. Plaintiffs, as well as any interested party, have been given public notice and an opportunity to be heard on the Motion. Therefore, relief under Federal Rule of Civil Procedure 60(b) stands proper.

### IV.   CONCLUSION

Because a substantial change in the law of public forum analysis makes the Consent Decree "no longer equitable," the Court hereby GRANTS Defendant's Motion to Vacate the Consent Decree (ECF No. 1). Accordingly, the Court hereby VACATES the Consent Decree and DISSOLVES any injunctive relief previously granted.

This case is now CLOSED.

Let the Clerk file a copy of this Memorandum Order and electronically notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  October 2, 2024

9